## Michael Lyons *et al.*

### *v.*

### The People of the State of Illinois.

1. Burglary—*indictment for breaking into car.* An indictment for burglary, which charged that the defendants, on, etc., at, etc., "in the night time of the same day, a freight car of the Illinois Central Railroad Company, incorporated as such railroad company under the laws of the State of Illinois, by virtue of an act of the General Assembly thereof, feloniously, wilfully, maliciously and forcibly did then and there break and enter, with intent the goods and chattels of the said Illinois Central Railroad company, in the said freight railroad car then and there being, feloniously to steal, take and carry away," etc. It was objected that it was bad because the word "burglariously" was omitted: *Held*, that as the offense was stated in the terms and language of the statute, and so plainly that the nature of the offense could be easily understood, it was sufficient.

| 68 | 271 |
| 23a | 512 |
| 68 | 271 |
| 125 | 260 |
| 68 | 271 |
| 131 | 600 |
| 68 | 271 |
| 132 | 509 |
| 68 | 271 |
| 134 | 449 |
| 68 | 271 |
| 137 | 198 |
| 68 | 271 |
| 150 | 445 |
| 68 | 271 |
| 160 | 503 |
| 68 | 271 |
| 81a | 578 |
| 68 | 271 |
| 179 | 359 |
| 68 | 271 |
| 92a | 6404 |
| 68 | 271 |
| 114a | 8101 |

2. SAME—*leaving door unlocked.* In order to constitute burglary in breaking into a railroad car with intent to steal, it is not necessary that the doors of the car should be locked or fastened in some secure way, so as not to tempt persons to enter. The carelessness of the owner in securing and guarding his property, affords no excuse to the commission of a burglary or larceny.

3. When a door is closed, it is burglary for any one, with a felonious intent, to open it and enter the house in the night time, without the owner's consent, and it makes no difference how many bolts and bars might have been used, but which were neglected. But if the owner is consenting to the entry, there can be no burglary.

4. INDICTMENT—*statute relating to, construed.* Sec. 162 of the Criminal Code of 1845, which provides that an indictment shall be sufficient which charges the offense in the terms and language of the statute, or so plainly that the nature of the offense may be easily understood by the jury, is not limited to the criminal code as it then existed, but it is a general rule of criminal pleading, applicable to all cases within its terms, without regard to the date of the enactment of the statute under which the cases may arise.

5. SAME—*joinder of counts.* Although it is not proper to include separate and distinct felonies in different counts of the same indictment, it is proper to state the same offense in different ways in as many different counts as the pleader may think necessary, even though the judgment on the several counts be different, provided all the counts are for felonies, or all for misdemeanors. So, a count for larceny may be joined in an indictment for burglary.

6. CRIMINAL LAW—*general verdict where there are several counts.* Where an indictment contained two counts, one for burglary and the other for the larceny of goods of the value of $5, and the jury returned a general verdict of guilty and fixed the term of confinement in the penitentiary, it was urged that no judgment could be rendered thereon, as the second count showed petit larceny only: *Held,* it being evident that both counts related to the same transaction, that the objection was not well taken.

7. SAME—*punishment on general verdict.* Where an indictment in one count charges a burglary and in another a larceny, at the same time, in the car or building which was broken and entered, and the defendant is found guilty generally, and a punishment imposed which is by law authorized to be inflicted for the offense charged in either count, the verdict must be sustained.

8. CRIMINAL LAW—*instruction as to probability, etc., of guilt.* On the trial of an indictment the defendants asked the following instruction: "The policy of the law is, that it were better that ninety and nine, or any indefinite number of guilty persons should escape, than that one innocent man should be convicted, and that mere probabilities are not suffi-

cient to warrant a conviction; nor is it sufficient to authorize a conviction that the greater weight or preponderance of evidence supports the allegation of the indictment; nor that, upon the doctrine of chances, it is more probable that the defendants are guilty than that they are innocent, *not even if the probabilities are as one million, or any indefinite number, in favor of their guilt, to one in favor of their innocence.* Unless the jury are able to say from all the evidence that every material allegation of the indictment is proven beyond a reasonable doubt, they must find the defendant not guilty." The court struck out the words italicised: *Held,* that they were properly stricken out, as they declared no rule of law and elucidated none already given, and only tended to perplex and confuse the minds of the jurors.

9. In the same case the defendants asked the following instruction: "Before the jury can convict, it must be made to appear beyond a reasonable doubt that the defendant, and not somebody else, committed the offense charged in the indictment. It is not sufficient that the evidence shows that the defendant *or* some other persons committed such offense, nor that the probabilities are that the defendants and not some one else committed such offense." The court modified it by adding: "unless those probabilities are so strong as to remove all reasonable doubt of the innocence of the defendants, or either of them, and to leave in the minds of the jury no reasonable doubt of the defendants' guilt:" *Held,* that the modification did not authorize a conviction upon mere probabilities, but from the probabilities arising from the evidence, and could not prejudice the defendants.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

This was an indictment against Michael Lyons and Stephen Shevelin, for burglary. The facts are fully stated in the opinion.

Mr. E. F. BULL, for the plaintiffs in error.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The indictment upon which the defendants were convicted contains two counts. The first count charges:

That the defendants, on the 13th day of September, 1871, at the county of La Salle, "in the night time of the same day,

18—68TH ILL.

a freight railroad car of the Illinois Central Railroad Company, incorporated as such railroad company under the laws of the State of Illinois, by virtue of an act of the General Assembly thereof, feloniously, wilfully, maliciously and forcibly did then and there break and enter, with intent the goods and chattels of the said Illinois Central Railroad Company, in the said freight railroad car then and there being, feloniously to steal, take and carry away, etc."

The second count charges the larceny of three boxes of peaches, the property of the railroad company, of the value of five dollars.

It is objected by the defendants that the first count is defective because the word "burglariously" is omitted. In support of this objection it is argued that the 162d section of the Criminal Code, Rev. Stat. of 1845, is limited to the criminal code as it existed when that section was enacted, and that it can have no application to the act of the 19th of February, 1859.

It is undoubtedly true that the word "burglariously" was indispensable to a count for burglary at common law, but it is equally true that the offense described in the first count is not a common law burglary. It is made burglary by the act of February 19, 1859, alone. The offense is stated "in the terms and language of that act, and so plainly that the nature of the offense may be easily understood by the jury," and this is sufficient.

The 162d section of the Criminal Code, (Revised Laws of 1845,) is not, as is contended by the defendants, limited to the criminal code as it existed when that section was enacted. It is a general rule of criminal pleading, applicable to all cases within its terms, without regard to the date of the enactment of the statutes under which the cases shall arise. This court has repeatedly so construed and applied it. *Canady* v. *The People,* 17 Ill. 159; *Morton* v. *The People,* 47 ib. 472; *Dunn* v. *The People,* 40 ib. 466.

The jury returned a general verdict, finding the defendants "guilty in manner and form as charged in the indictment," and fixed their punishment at one year's imprisonment in the penitentiary.

The defendants object to this verdict, and claim that no judgment can be given upon it because the first count is for burglary, which is punishable by confinement in the penitentiary, and the second count is for petit larceny, which is punishable in a different way.

If these were separate and distinct felonies, committed in different transactions, the position would unquestionably be correct. But it is shown by the record that if the defendants are guilty at all, they are only guilty for what they did in a single transaction. No evidence was either given or offered to be given of more than one transaction.

The rule laid down in the text books is, that although it is not proper to include separate and distinct felonies in different counts of the same indictment, it is proper to state the same offense in different ways in as many different counts as the pleader may think necessary, even although the judgment on the several counts be different, provided all the counts are for felonies or all for misdemeanors. 1 Archbold's Criminal Practice and Pleading, 93–1; 1 Bishop's Criminal Procedure, § 208. And on this principle a count for larceny may be joined in the same indictment with a count for burglary, and it is held that these offenses may be even joined in the same count. 1 Hale's Pleas of the Crown, 556, 557; 1 Russell on Crimes, 827, 828; 2 Archbold's Criminal Practice and Pleading, 329–1, 329–2. And evidence that a felony was actually committed is evidence that the breaking and entering were with intent to commit that offense. Roscoe's Criminal Evidence, 365; 1 Hale's Pleas of the Crown, 560. It is obvious, therefore, that no harm, in a legal sense, could possibly have resulted to the defendants, during the progress of the trial, by the introduction of evidence applicable to either count.

The logical effect of the verdict is, that the defendants are guilty as charged in each count. *Curtis* v. *The People*, Breese, 259. But as the punishment imposed is only that prescribed by law for the offense charged in the first count, it is reasonably certain that the jury intended, by their verdict, to find the defendants guilty, and punish them for the offense charged in that count alone, and that they should not be punished in addition for the offense charged in the second count, and to this effect was the judgment of the circuit court. "The general rule is," says TREAT, Justice, in *Stoltz* v. *The People*, 4 Scam. 168, "that the verdict must be as broad as the issues submitted, and it was formerly held, with much strictness, that a failure to find on all the issues vitiated the verdict. The tendency of modern decisions, however, has been to relax the severity of the rule, and sustain the verdict where the intention of the jury can be ascertained." In that case this court held, where the defendant was tried on an indictment containing two counts, and the jury returned a verdict finding the defendant guilty as to the first count, saying nothing as to the second count, that the verdict was sufficient. So, upon like principle, this court has held that a general verdict is sufficient, where an indictment contains two or more counts and one of the counts is defective. *Townshend* v. *The People*, 3 Scam. 329; *Holliday* v. *The People*, 4 Gilm. 113. It necessarily follows that where an indictment, as in this case, in one count charges the breaking and entering of a car with intent to steal, and in another count a stealing, at the same time, in the car which was so broken and entered, and the defendant is found guilty generally, and a punishment imposed which is by law authorized to be inflicted for the offense charged in either count, the verdict must be sustained; and this is in accordance with the decided preponderance of the authorities in the United States. Wharton's Am. Crim. Law (ed. of 1868,) Secs. 415, 416, 417; *Commonwealth* v. *Hope*, 22 Pickering, 5; *Crowley* v. *Commonwealth*, 11 Metcalf, 575; *Kite* v. *Same*, ib. 581; *Cook* v. *The State*, 4

Zabriskie, 846; *Manly* v. *The State,* 7 Md. 148; *Frolick* v. *The State,* 11 Ind. 213; *State* v. *Hooker,* 17 Vt. 658.

The defendants insist that the court below erred in modifying their fourth, tenth, and eleventh instructions, and in refusing to give their twelfth, thirteenth, and fourteenth instructions as asked.

The fourth instruction, as asked, was this:

" The policy of the law is, that it were better that ninety and nine, or any indefinite number of guilty persons should escape, than that one innocent man should be convicted, and that mere probabilities are not sufficient to warrant a conviction; nor is it sufficient to authorize a conviction that the greater weight or preponderance of evidence supports the allegation of the indictment; nor that, upon the doctrine of chances, it is more probable the defendants are guilty than that they are innocent, not even if the probabilities are as one million, or any indefinite number in favor of their guilt, to one in favor of their innocence; unless the jury are able to say, from all the evidence, that every material allegation of the indictment is proven beyond a reasonable doubt, they must find the defendant not guilty."

It was modified by striking out the words: " Not even if the probabilities are as one million, or any indefinite number in favor of their guilt, to one in favor of their innocence."

The words stricken out neither declare a rule of law nor correctly elucidate one already declared. They merely attempt to illustrate the rule previously declared, by reference to numbers. It is well remarked by Mr. Starkie, that " The notions of those who have supposed that mere moral probabilities or relations could ever be represented by numbers or space, and thus be subjected to arithmetical analysis, can not but be regarded as visionary and chimerical." 1 Starkie on Evidence, 507. The illustration proposed could only have tended to perplex and confuse the minds of the jurors, and it was properly stricken out.

The tenth instruction, as asked, was this:

"10.   Before the jury can convict, it must be made to appear beyond a reasonable doubt that the defendant, and not somebody else, committed the offense charged in the indictment.   It is not sufficient that the evidence shows that the defendant *or* some other persons committed such offense, nor that the probabilities are that the defendants and not some one else committed such offense."

It was qualified by adding:

"Unless those probabilities are so strong as to remove all reasonable doubt of the innocence of the defendants, or either of them, and *to leave in the minds of the jury no reasonable* doubt of the defendants' guilt."

The qualification does not, as we understand it, declare any new or hitherto unknown rule of law, as is claimed by the counsel for defendants.   It does not authorize a conviction upon a mere preponderance of probabilities.   If, from the evidence, the probabilities of the defendants' guilt are so strong as to convince the minds of the jury of that fact, beyond a reasonable doubt, they should convict.   And this is the substance of the language used.

It is said, in Starkie on Evidence, vol. 1, 477: "Evidence which satisfies the minds of the jury of the truth of the fact in dispute, to the entire exclusion of every reasonable doubt, constitutes full proof of the fact; absolute mathematical or metaphysical certainty is not essential, and in the course of judicial investigation would be usually unattainable.   Even the most direct evidence can produce nothing more than such a high degree of *probability* as amounts to moral certainty."   We do not think the qualification of the instruction could have prejudiced the defendants.

This is the eleventh instruction, as asked:

"11.   That even if the jury should believe, from the evidence, beyond a reasonable doubt, that the defendants feloni-

ously took and carried away the property described in the indictment, and that such property was the property of the Illinois Central Railroad Company, such facts alone could not authorize a conviction under the first count of the indictment."

It was qualified by adding:

" In order to constitute the offense of burglary, as defined in that count, there must be the wilful, malicious and forcible breaking and entering the car with intent to steal, as defined in the instructions on the part of the people."

The objection urged to this is, "that the defendants had a right to have that instruction given as asked; that it applied to the first count, and that it was the law as applied to that count." The answer to this is, the qualification added also applies to the first count, and it is also the law as applied to that count. The object of instructions is, to inform the jury what the law is, and so long as they do so correctly, they are not objectionable. The qualification was proper.

The twelfth, thirteenth and fourteenth instructions, asked by the defendants and refused by the court, are as follows:

" 12. That before the jury can convict under the first count of the indictment, it must appear beyond a reasonable doubt that the defendants broke and entered the car as described in the indictment, and to constitute a breaking sufficient to establish the crime of burglary, if the breaking consist in opening a door, it must appear that such door was fastened in the usual and ordinary way, and that it was not left in such a condition as to tempt the person charged with the offense to enter.

" 13. That if the door of the car, for the breaking of which the defendants are. charged by the first count of the indictment, was simply closed at the time of such alleged breaking and entering; or if secured at all, only secured to the extent necessary to keep the same closed during the

motion of the train, and not for the purpose of protecting the fruit situated therein; or if it was left in an unsafe or insecure condition by the servants of the railroad company for the purpose of inducing persons to enter therein, then in such case the defendants can not be found guilty under the first count of the indictment.

"14. The jury are further instructed that, in order to constitute a sufficient breaking of the door to create the crime of burglary, it must appear that the same was secured in the ordinary way, so that by the carelessness of the owner or his servants, or his or their intentional neglect, the party accused of burglary be not tempted to enter."

The only evidence in the record to which these instructions could apply, shows that Zeek, the conductor of the freight train in which was the car alleged to have been broken, when his train arrived at La Salle, going north, unlocked the fruit car and placed Forristal and Fuller in it, and that he then closed the door and bolted it on the outside, but did not lock it, and that the car was only thus fastened when it is claimed the defendants broke and entered it. The evidence does not disclose why this was done—the inference, however, is obvious. We are not aware of any authority which goes to the extent of these instructions. To hold that the carelessness of the owner in securing and guarding his property shall be a justification to the burglar or thief, would leave communities very much to the mercy of this class of felons. It would, in effect, be a premium offered for their depredations by the removal of the apprehension of punishment. Whether property is guarded or not, it is larceny in the thief who steals it. When a door is closed, it is burglary for any one with a felonious intent to open it and enter the house, in the night time, without the owner's consent, and it makes no difference how many bolts and bars might have been used to secure it, but which were neglected. It is true, that if the owner is consenting to the entry there can be no burglary, but that is not the pro-

position asserted by these instructions. The law, as stated in 1 Bishop's Criminal Law, sec. 344, is: "Exposing property, or neglecting to watch it, under the expectation that the thief will take the property, or furnishing any other facilities or temptation to the wrong doer, is not consent in law."

The instructions were properly refused.

It is earnestly contended by the defendants that the verdict is against the weight of the evidence.

We have carefully examined the evidence as it is presented in the record, and we are satisfied that it authorized the jury to render their verdict as they did.

The evidence of Forristal is positive and complete as to the defendants' guilt. He is, to a considerable extent, corroborated by the evidence of Zeek, Clark, Rodgers and Howe, and also by the undisputed circumstances that the car door was unbolted and opened, and two boxes of peaches taken from the car by some one; that Lyons was arrested just on the outside of this opened door ; that Shevelin fled, was pursued and arrested near by, and that these arrests were made almost immediately after Forristal made the out-cry.

The evidence of the defendants fails to show a reasonable probability of their innocence. It is inconclusive and liable to great suspicion. Connors says that the defendants could not have committed the offense; that he was with them as they crossed the railroad track and started up the train on the west side; that as they got opposite the next car to the caboose they heard the cry, "catch him," "shoot him," and all started to run, and some got ahead of the others; that Lyons could not have been more than ten feet ahead of him, and Shevelin was still ahead of Lyons; that as they got opposite the fruit car, some one jumped from the train and caught Lyons, when he turned back. It will be noticed that he does not state as a fact what distance Lyons was ahead of him, or that, indeed, he knew. He merely states, inferentially, that "he could not have been," etc. Elsewhere in his evidence he states: "It was a kind of misty night, drizzling rain ;

it was pretty dark and kind of foggy; it commenced about dark to rain; I could not distinguish a man any distance, unless he spoke to me." If this be true, it is very doubtful whether he could tell what the defendants did. But it is hardly probable that his story that they were opposite the car next to the caboose, when they heard the cry of "catch him," "shoot him," etc., can be true. There were fifteen cars in the train, and the fruit car was about the middle. Zeek, Clark, Rodgers and Howe all started and ran when they heard the cry "catch him," etc. They were all, with the exception of Rodgers, much nearer to Forristal than the place where Connors says he was. When Zeek got to Forristal he had Lyons in custody. Shevelin was arrested west of the engine. Howe was on the engine, and when he heard the cry, ran to the shanty west of the engine and helped catch Shevelin. It is scarcely probable that Shevelin ran from the car next to the caboose to the fruit car, and then north-west to this shanty, by the time Howe ran there from the engine. Why should he have run to the fruit car and, without halting, run on to where he was arrested?

Bennett also says that he does not think the defendants could have committed the offense; that he, also, was with them when they crossed the railroad and started up the train on the west side; that when they got opposite the car next the caboose they heard the cry " catch him," " shoot him," etc., and all started to run; but he went to the well; he did not go as far as the fruit car; he did not know whether defendants did or not; he did not know that the car was opened and peaches taken out, nor that the defendants were arrested, until next morning. The sum of his evidence, if true, shows only that he does not know whether the defendants committed the offense or not.

There are several circumstances which appear from the evidence of the defendants' witnesses, that must have tended very strongly to raise an unfavorable presumption against the

defendants, and also the witnesses, aside from the evidence introduced by the prosecution.

It appears that Lyons' home was east and south of where the offense is alleged to have been committed. Shevelin was staying at Doyle's, who also lived east and south from this place. The parties were together at the railroad crossing at eight o'clock, before the freight train came in, sitting down and talking—at least, so Bennett describes them when he came to them with his pail. The night was dark, " foggy," " misty," "drizzling," "rainy." It had commenced raining about dark, as represented by them. After the train had passed north on the switch, they all crossed over and started up the train on the west side. This was in an opposite direction to the way Lyons and Shevelin would have gone if they had been going home. They were not going to the well, as it was off farther to the west. It is not shown that they had any business in this direction, nor about the train, nor with those in charge of the train. It is, to say the least, marvelous that men should, without a purpose, sit in the dark and rain waiting for the arrival of a train, and, when it arrives, follow it up. Men usually act from motives. If there were motives here which were honest, it would seem that some one could have been found who would have explained them. Inasmuch as it was neither done nor attempted to be done, the inference is unfavorable to the defendants, and the circumstances strongly tend to discredit these witnesses.

Under all the circumstances we are unable to say that the verdict of the jury does injustice to the defendants.

Perceiving no error in the record, the judgment of the circuit court is affirmed.

*Judgment affirmed.*