## WILLIAM H. BEASLEY

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. GRAND JURY—*of the number required.* Although the statute requires the panel or list of grand jurors shall consist of twenty-three persons, a less number, if at least sixteen, will constitute a legal grand jury to find an indictment.

2. SAME—*of filling the panel.* The statute providing that if the panel, for any cause, shall not be full, the court "shall direct the sheriff to summon from the body of the county a sufficient number of persons having the qualifications of jurors," to fill the panel, is not mandatory, but directory only. The word *shall*, in this connection, means "may," leaving it to the discretion of the court whether or not to fill the panel at once.

3. INDICTMENT—*when it must negative exceptions.* Where an act is made criminal, with exceptions embraced in the same clause of the statute which creates the offense, so as to be descriptive of the offense intended to be punished, the indictment stating the act to have been done must negative the exceptions, so as to show affirmatively the precise crime defined has been committed.

4. There are exceptions to this general rule, as, where the exception or proviso is in a subsequent clause of the statute, or if in the same section and not incorporated with the enacting clause by any apt words of reference. In such cases it is a matter of defense, and need not be negatived in the indictment.

5.    While it is necessary that all exceptions contained in the enacting clause, creating or defining the offense, must be negatived, it is not required that the precise words of the statute be used for that purpose. Any equivalent words conveying the same meaning will suffice.

6.    It is not a valid objection to an indictment for an offense created by statute with an exception. that it negatives more than the statute requires, as it imposes on the prosecution the necessity for stricter proof and certainty in that respect than otherwise would be necessary, if the language of the statute were used.

7.    SAME—*murder by attempting an abortion.* An indictment for murder in one count charged that the defendant, by means of a certain instrument which he used, produced an abortion on the deceased, "it not being then and there necessary to cause such miscarriage for the preservation" of the life of the patient, and in another count that the defendant administered to the deceased "a noxious and abortifacient drug," with the intent to produce a miscarriage, "it not being then and there necessary to administer said noxious and abortifacient drug" * * * for the preservation of the life of the deceased; it was *held*, that the indictment sufficiently negatived the exception in the statute providing that "unless the same were done as necessary for the preservation of the mother's life."

8.    SAME—*joinder of counts.* An indictment may state the same offense in different ways in as many different counts, even though the judgment on the different counts be different, provided all the counts are for felonies or all are for misdemeanors.

9.    EVIDENCE—*when letters of witness to defendant are admissible in rebuttal.* Where one indicted, on the trial, in cross-examination of a witness to show that the witness is unfriendly to him, shows the witness' letters written by her to him, the authorship of which is admitted, and reads to the witness passages reflecting on him, in the presence of the jury, the prosecution may be allowed to read the whole of such letters to the jury.

10.    SAME—*opinion of witness from evidence.* A question to a physician called as a witness, in reference to certain testimony, if on such testimony he would lose faith in the character of any person whose character had before been high in his estimation, is improper, and should not be allowed.

11.    CRIMINAL PRACTICE—*remarks of judge.* Expressions of the judge trying a criminal case, in regard to objections raised, though not strictly accurate statements of the law, if not of a character to work injury to the defendant, are not error of sufficient gravity to be the ground of reversal where no other error intervenes. .

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

At the June term, 1877, of the Knox county circuit court, William H. Beasley was indicted for the crime of murder, in producing an abortion on Mattie Naslund from the effects of which she died.

In the first count of the indictment it is charged, the accused " did unlawfully, feloniously and willfully use a certain instrument called a gum-bougie, by then and there forcing, thrusting and inserting the said instrument, called a gum-bougie, into the womb and private parts of one Mattie Naslund, then and there being a woman pregnant with child, and in the peace of the people, with intent then and there to produce the miscarriage of the said Mattie Naslund, and did thereby unlawfully, feloniously and willfully, with malice aforethought, cause the miscarriage of said Mattie Naslund, *it not being then and there necessary to cause such miscarriage for the preservation of the life of said Mattie Naslund* (the said William H. Beasley then and there well knowing that the use of said instrument as aforesaid at the time aforesaid in the manner aforesaid would produce such miscarriage), by reason whereof the said Mattie Naslund from the said sixth day of May, in the year aforesaid, did languish, and languishing did live, on which said nineteenth day of May, in the year aforesaid, at the county aforesaid, the said Mattie Naslund died."

In the fifth count it is charged, accused "did then and there, unlawfully and feloniously, and of his malice aforethought, administer to one Mattie Naslund, then and there being a woman pregnant with child, in the peace of the people then and there being, a certain noxious and abortifacient drug, the name of which said noxious and abortifacient drug is to the grand jurors unknown, with intent then and there to produce the miscarriage of the said Mattie Naslund, * * * *it not being then and there necessary to administer said noxious and abortifacient drug,* the name of which is to the grand jurors unknown, for the preservation of the life of said Mattie Naslund."

The other counts of the indictment do not differ materially from these counts, except as to the description of the manner and means used to produce the abortion.

On the motion to quash the indictment the principal points made by defendant were as follows:

1.   The said indictment was not returned into open court by a grand jury impaneled under the laws of this State.

2.   Each and every count of said indictment is defective in that they all and each fail to allege that the abortion or miscarriage was not produced or attempted *as necessary* to save the life of the person alleged to have been murdered, (Mattie Naslund).

\*          \*          \*          \*          \*          \*          \*          \*

8.   Each count is defective in that it simply negatives the absolute necessity of producing abortion in order to save the life of Mattie Naslund, and would make this defendant criminally liable for an honest and excusable error.

The court overruled the motion to quash the indictment, and at the October term, 1877, of the circuit court, defendant was placed on trial, and on conviction was sentenced to the penitentiary for a period of four years. Motions for a new trial and in arrest of judgment were severally overruled, and defendant brings the case to this court on error.

The three principal errors, which it is said includes all others, upon which defendant relies for a reversal of the judgment, are as follows:

1.   The circuit court erred in refusing to grant defendant's motion to quash the indictment.

2.   The circuit court erred in refusing to grant defendant's motion to set aside the verdict and for a new trial.

3.   The circuit court erred in overruling defendant's motion in arrest of judgment.

Messrs. McKENZIE & CALKINS, for the plaintiff in error.

Mr. J. J. TUNNICLIFFE, State's attorney, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the motion to quash, a question is made against the indictment, it was not returned into open court by a grand jury legally impaneled under the laws of this State. Twenty-three grand jurors were in fact chosen, and all of them were duly summoned to attend, but on the roll being called only twenty-two of the number chosen answered, and the one failing to answer was by the court excused from service for cause shown.

The grand jury was then regularly organized by appointing a foreman and administering to them the usual oath, and consisted of twenty-two members out of the twenty-three chosen. The grand jury thus organized is the one that found the indictment against defendant.

That which is said to render the grand jury an illegal body is, that the court omitted to direct the sheriff to summon from the body of the county another person having the qualifications of jurors, to fill the panel. By section 16, chapter 78, entitled "Jurors," it is declared, " a panel of a grand jury shall consist of twenty-three persons, sixteen of whom shall constitute a grand jury." It must be understood the word " panel" is used in this connection in its commonly accepted sense. According to Roget it is equivalent with " list, catalogue, inventory, schedule, register, record." Lexicographers generally adopt as one definition that given by Blackstone, viz: " a schedule containing the names of persons whom the sheriff returns to serve on trials." It will be observed it is the " panel " or " list" or " schedule " that shall consist of twenty-three persons, and not the grand jury, for it is expressly declared sixteen of the persons whose names are on the panel or list of jurors selected, " shall constitute a grand jury."

But as section 9 of the same chapter provides that " if, for any reason, the panel of the grand jury shall not be full at the opening of such court, the judge shall direct the sheriff to summon from the body of the county a sufficient number of persons having the qualifications of jurors, as provided by this

act, to fill the panel," it is said it was error to omit the duty enjoined.

That depends upon the construction that shall be given to this clause of the statute,—whether it shall be held to be mandatory or only directory. Reading the word *shall* as *may*, as is allowable from the context, it is simply directory. That is plainly its meaning. When more persons, whose names appear on the list chosen, than are necessary under the law to constitute a grand jury, answer for service, what immediate necessity can there be for filling the panel before organizing the grand jury? Plainly none, as sixteen of the number selected are all that are necessary for that purpose. Evidently it was intended it should be left to the discretion of the judge presiding whether there was any necessity or not for filling the panel at once.

Whether the indictment was defective in not negativing, in the precise language of the statute, the fact the abortion may have been produced or attempted as necessary for the preservation of the life of the mother, presents a question of some difficulty, and one not altogether free from doubt. That clause of the statute under which the indictment was found makes it a crime of a high grade, and if the death of the mother ensues, it is murder for any one, " by means of any instrument, medicine, drug or other means whatever, to cause any woman pregnant with child to abort or miscarry, or attempt to produce an abortion or miscarriage, unless the same were done as necessary for the preservation of the mother's life." The indictment charges in one count, that by means of a certain instrument which defendant used, he produced an abortion on deceased, " it not being then and there necessary to cause such miscarriage for the preservation of" her life, and in another count that defendant administered to deceased " a noxious and abortifacient drug" with the intent to produce a miscarriage, " it not being then and there necessary to administer said noxious and abortifacient drug * * * for the preservation of the life" of deceased.

Undoubtedly the general rule is, where an act is made criminal, with exceptions embraced in the same clause of the statute which creates the offense, so as to be descriptive of the offense intended to be punished, it is necessary, in the indictment stating the act had been done, to negative the exceptions so as to show affirmatively the precise crime defined has been committed. There are exceptions to this general rule, as, where the exception or proviso be in a subsequent clause of the statute, or if in the same section and not incorporated with the enacting clause by any apt words of reference, it is, in that case, a matter of defense, and need not be negatived in the pleading. *Lequat* v. *The People*, 11 Ill. 330; *Metzker* v. *The People*, 14 id. 101. The law is equally well settled, that while it is necessary that all exceptions contained in the enacting clause, creating or defining the offense, must be negatived, it is immaterial that the precise words of the statute are not employed for that purpose. It need not be done by using the exact words of the statute. Any equivalent language that excludes with the same certainty the exceptions contained in the act defining the crime, may with equal propriety be employed.

Philologists give to *as*, when used in the English language where the context seems to require it, the same meaning as "it" or "that" or "which." Accordingly, the exceptions indicated in this statute might be read " unless the same were done it were necessary." Adopting this construction as fully authorized by the idioms of our language, the indictment negatives the exceptions of the statute by the use of the converse " it not being necessary," which brings the case precisely within the rule as laid down in the books. Treating the phrase " unless the same were done it were necessary " as the equivalent of the words of the statute, the effect, so far as the defendant is concerned, is the same. In either case, if the abortion was produced or attempted in good faith it were necessary to preserve the life of the mother, there would be no crime, and that fact could always be made to appear on the defense.

But there is another view that may be taken. In the case at bar, as we have seen, the pleader has negatived all necessity for producing an abortion for the preservation of the life of the mother, and if that is so, how can it be said defendant produced the abortion *as necessary* for the preservation of the life of the mother. It is said, the words employed by the pleader negative more than the statute requires. If that be so, it imposed on the prosecution the necessity for stricter proof, and certainly, in that respect, it was more favorable for defendant than if the exceptions had been negatived by the use of the language of the statute. The averment is absolute, there was no necessity for producing the abortion for the preservation of the life of the mother, and that excludes, as effectually as language can do, the idea it was done *as necessary* for that purpose, unless the same were done in bad faith, which, of course, would not excuse defendant.

The fifth count of the indictment charges defendant with administering to deceased, with intent to produce a miscarriage, a certain "noxious and abortifacient drug," it not being necessary to administer the same for the preservation of her life. Objection is made that this count of the indictment does not sufficiently negative the abortion was not produced as necessary for the preservation of the life of the mother. It will be observed, defendant is not here charged with procuring or producing an abortion or miscarriage on the person of deceased, but only with administering a "noxious and abortifacient drug," with intent to produce a miscarriage, and it would seem to be sufficient to negative the fact, as was done, it was necessary for the preservation of the life of the mother to administer the drug at all.

There is no misjoinder of counts in the indictment. Every count is for the same offense, and it is allowable for the pleader to state the same offense in different ways, in as many different counts, even though the judgment on the different counts be different, provided all the counts are for felonies or all for misdemeanors. Here, all the counts are for felonies,

and that brings the case precisely within the principle of *Lyons* v. *The People*, 68 Ill. 271.

Upon the return of the verdict defendant entered a motion to set the same aside, and for a new trial. Numerous special reasons were assigned in support of the motion, but only a few are insisted upon in argument, and some of them have been disposed of by what has been previously said in considering other questions. The matter complained of as improper evidence admitted on the part of the prosecution, consists of certain letters written by the witness, Jessie Wendall, to defendant. On cross-examination, she was asked whether she was friendly to defendant, and on denying she entertained any ill-will towards him, she was shown two letters, which she admitted she had written, and certain passages from them were read to her, which reflected unkindly on defendant, and she was asked if she had written those things. She readily admitted the authorship of the letters and of the particular passages read to her reflecting upon defendant. Having in this way succeeded in having read before and in the presence of the jury passages from the letters, it was allowable the prosecution should read the whole of them to the jury. It would be unfair to the witness that portions of her letters should be read, without giving her the benefit of whatever else might be contained in them on the same subjects. At most the remaining portions of the letters read to the jury were of the same character, and simply cumulative to what were read by defendant, and for that reason could do no harm to the defense.

Nor was there any error in rejecting testimony offered for the defense. The question propounded to one physician and considered as propounded to another, in reference to certain testimony, " if, on that testimony, you would lose faith in the character of any person whose character had heretofore been high in your estimation," was improper, and the court ruled correctly in not allowing it to be answered by either witness.

Where objections are constantly being raised on the trial, the court must, of necessity, in passing upon them, remark concerning them in the presence of the jury, and it may be such remarks are not always accurate expressions of the law. But such questions are pressed upon the attention of the court when there is no opportunity for reflection, and it would be adopting too strict a rule to hold that every expression of the court that might not bear the severest criticism would be error of sufficient gravity to be the ground of reversal, where no other error intervenes. The remark of the court complained of in this case, whether entirely proper or not, certainly did not prejudice the cause of defendant.

Another point discussed on this branch of the case is, the verdict is contrary to the law and the evidence. On looking into the evidence, there can be no reasonable doubt of the guilt of defendant. That defendant, by the use of an instrument, caused deceased to miscarry, from the effects of which she died, admits of no doubt, on the testimony found in the record. As defendant was not a physician, and did not claim any skill in such matters, there can be no pretense he caused the miscarriage for the preservation of the life of the mother. An analysis of the testimony reveals clearly the guilt of defendant, and he stands convicted of a crime from which the mind recoils with horror. It is established by facts and circumstances in evidence, about which there can be no dispute, that the condition of deceased was attributable to the wrongful conduct of defendant, and procuring the abortion which resulted fatally was an effort to conceal their mutual shame.

Elaborate criticism has been indulged on the instructions given and refused by the court at the trial. After having looked into the instructions given, and the modifications made of others, it is not perceived that defendant has any just cause for complaint on that score. That some slight inaccuracies may be found to exist in the expressions of the law may be expected, but when the whole series is considered, nothing is discovered that could be regarded as seriously hurtful to

the cause of defendant. This court might not be willing to approve of every expression of law contained in the instructions as entirely accurate, but it by no means follows that such slight inaccuracies as might be found to exist on a severe analysis, would justify the reversal of a conviction sustained by the fullest evidence, that even excludes every reasonable hypothesis of innocence. Should it be so held, it would render the practice in criminal cases so technical as to defeat all convictions. Such objections, not affecting injuriously the accused, ought not to be entertained. Every one charged with crime, no matter what the nature of the offense may be, nor his position in life, is entitled, under our laws, to a fair and impartial trial before a jury drawn from the vicinage. When that is accorded to the accused, he has no just cause to complain. That is the case here. A full and fair trial has been given defendant before a jury of his country, and if he is now to suffer punishment, it must be attributed to his guilty conduct in the commission of crime from the consequences of which he can not expect to escape.

No error hurtful to defendant appearing in the record, the judgment must be affirmed.

*Judgment affirmed.*