THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROY TATE, Plaintiff in Error.

*Opinion filed February 17, 1925.*

1. PROHIBITION—*what may be considered as circumstantial evidence of violation of Prohibition act.* In a prosecution for violation of the Prohibition act in keeping intoxicating liquor for the purpose of sale, evidence of the conduct of the defendant and the parties in the room when the officers raided the place where the liquor is alleged to have been kept for sale may be considered by the jury as circumstantial evidence having a material bearing on the charge in the indictment.

2. SAME—*search warrant under section 30 of Prohibition act is sufficient for night seizure.* A search warrant issued under section 30 of the Prohibition act authorizes a seizure in the night time, and being in conflict with section 17 of the Search and Seizure act the latter is repealed thereby, and exhibits found as a result of the search and seizure under a proper warrant are admissible in evidence.

3. SAME—*when count sufficiently charges unlawful possession of liquor.* A count charging violation of section 28 of the Prohibition act is sufficient where it alleges that the defendant unlawfully and willfully possessed the liquor for the "purpose" of sale without permit of the Attorney General, as the use of the word "purpose" is equivalent to charging possession of liquor with "intent" to sell.

4. SAME—*when indictment sufficiently negatives an exception in Prohibition act.* An indictment alleging violation of the Prohibition act by unlawful possession of intoxicating liquor fit for use for beverage purposes for the purpose of sale is sufficient where it alleges that such possession was without any permit from the Attorney General to sell the liquor, though the exact language of the statute is not used. (*People* v. *Martin,* 314 Ill. 110, and *People* v. *Barnes,* id. 140, distinguished.)

5. SAME—*when instruction is not based on charge in the indictment.* Where an indictment for violation of the Prohibition act charges that the defendant unlawfully and willfully did possess for the purpose of sale certain intoxicating liquor without a permit from the Attorney General, it is error to instruct the jury that it is unlawful to possess intoxicating liquor at any place other than one's private dwelling without a permit to so possess it, as the charge is that the liquor was kept for sale.

6. SAME—*when jury should not be instructed that possession of intoxicating liquor is prima facie evidence of guilt.* Where an indictment charges unlawful possession of liquor for the purpose of sale and the evidence is conflicting as to how the liquor came to be on the defendant's premises, it is error to instruct the jury that under the Prohibition act possession of intoxicating liquor is *prima facie* evidence that such possession is for the purpose of sale, and that the defendant should be found guilty unless the jury believe from the evidence he acquired and used the liquor in a legal way.

7. CRIMINAL LAW—*instructions must be based on indictment.* Instructions must be based upon the charge contained in the indictment and be applicable thereto.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

LOREN B. LEWIS, and L. EARL BACH, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LESTER H. MARTIN, State's Attorney, GEORGE C. DIXON, and JOSEPH W. DEPEW, for the People.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Roy Tate, (herein referred to as the defendant,) was indicted in the circuit court of McLean county for violation of the Illinois Prohibition act. The indictment was in two counts. The first count charged a former conviction for transporting and possessing intoxicating liquor, and that on October 20, 1923, the defendant unlawfully and willfully did possess for the purpose of sale certain intoxicating liquor without having a permit from the Attorney General to possess the liquor. The second count, after charging the former conviction, charged that the defendant unlawfully and willfully did sell certain intoxicating liquor without having a permit from the Attorney General to sell the liquor. A motion to quash the search warrant under which the seizure was made of the intoxicat-

ing liquor in the possession of the defendant and to impound
the liquor seized was overruled by the court. A motion to
quash the indictment was denied, and upon a trial the de-
fendant was found guilty as charged in the indictment, and
after motions for a new trial and in arrest of judgment
were overruled, he was sentenced to the penitentiary for
an indeterminate term and to pay a fine of $1000. To re-
view the record this writ of error is prosecuted.

About four o'clock in the afternoon of October 20, 1923,
on a sworn complaint a search warrant was obtained by
the State's attorney of said county, issued by a justice of
the peace, authorizing the search of the second floor of a
building located at 412½ North Center street, in Blooming-
ton, either in the day or night. The second floor of the
building was occupied by a private social club for colored
men, known as the Elite Club, of which the defendant was
president. He was also custodian of the club rooms. The
club occupied five rooms. The rear room contained the
lunch stand, gas stove and bar. The room directly east
from the rear room was used as a cloak room. The room
east of the cloak room was a pool room. The room east
of the pool room was a parlor, and a small room south of
the parlor and over the stairway was used as an office. The
search warrant was delivered to the chief of police of
Bloomington by the State's attorney about eight o'clock,
and about ten o'clock he and four other police officers went
to the Elite Club to serve the warrant. On their arrival
at the stairs leading up to the club rooms a man came to
the entrance to the club rooms at the top of the stairs and
slammed the door, and the door thereby closed and auto-
matically locked. The officers rapped at the door and de-
manded admission, stating that they were officers with a
search warrant. Their demand not being answered they
broke open the door and entered. They proceeded to the
rear room and found the defendant behind the bar, with
his arms under it. The chief grabbed him by the arms,

instructed another officer to hold him, went behind the bar and found a brown jug turned upside down in a receptacle containing water which was for use in washing dishes and glasses. The contents of the jug were running into the water in the receptacle. The chief righted the jug and according to his statement proceeded to read the search warrant to the defendant. Two small whisky glasses were found in the receptacle, in which the officers detected the odor of whisky. There were about eighteen men, other than the defendant, in the club rooms at the time of the raid by the officers. All of the foregoing articles were in evidence before the jury as exhibits. Chemical analysis of the contents of the brown jug taken by the officers showed that it contained more than forty-three per cent of alcohol by volume and was fit for beverage purposes. The former conviction of the defendant as charged in the indictment was admitted by stipulation. ·

The evidence presented by the defendant in his defense is, in substance, that on the evening of the raid one Carter, a member of the club, had ordered a chicken dinner from the defendant, to be served in the club rooms about midnight that night to himself and a party of his friends. Carter arrived at the club with a package about 7:30 P. M., containing the jug of liquor taken by the officers, which he put in the cloak room by permission of the defendant. The defendant did not know what the package contained. Carter invited several members of the club who were present to accompany him to the cloak room to drink of the liquor. The defendant was engaged in the preparation of the dinner and did not see anyone take a drink of the liquor. No drink was offered to him. Other witnesses than the defendant who were present when Carter arrived, stated that he brought a package into the club rooms and placed it in the cloak room. Carter testified that he brought the jug and liquor to the club rooms and that defendant did not know that he had the jug there. The defendant testified that at

the time the police broke into the club rooms he saw Carter take the jug of liquor behind the bar; that he stooped down, picked it up and asked, "What is this?" that at the same time the chief of police grabbed him by the arm and told another officer to hold his arm, and the chief walked behind the counter and picked up the jug containing the liquor. He also testified that the search warrant was not read to him until the police had started to take him away from the club and after they had left the club rooms. Carter testified that when the police arrived he picked up the jug of liquor in the cloak room,—the brown jug,—and put it behind the bar, and defendant said, "What is this?" Another witness also corroborated the defendant and Carter on this point. This testimony is stated as given by the witnesses, and it is not the intention of the court to characterize or pass on the testimony of either side in this lawsuit.

Under the evidence in the case it was a question for the jury as to whether or not the defendant had possession of the liquor for the purpose of sale. While there is no positive evidence from any witness that there was any liquor sold by the defendant or that he had the liquor for the purpose of sale, the evidence shows that he was peculiarly and well situated and surrounded with all the paraphernalia to sell liquor. He had the liquor in his possession, as the evidence warranted the jury in believing, and that liquor was whisky. The evidence positively shows the members of the club had been drinking out of the whisky glasses. Circumstantial evidence is legal evidence and may be considered by the jury for all that it is worth. The conduct of the defendant and of the other parties who were present when the officers broke in onto them was also a proper matter for the consideration of the jury. All the foregoing circumstances have a very material bearing on the charge in the first count of the indictment.

The court did not, for any of the grounds urged by the defendant, err in refusing to quash the search war-

rant and to impound and to exclude the exhibits found as a result of the search and seizure. The warrant was authorized by the provisions of section 30 of the Prohibition act, under which this prosecution is had. This section is substituted in the Prohibition act in lieu of section 17 of the Search and Seizure act, which latter section requires a warrant that is to be used for night search and seizure to be issued by two justices of the peace. As section 30 is in conflict with section 17 of the Search and Seizure act, the latter section is repealed. (*People* v. *Williams,* 309 Ill. 492.) All the exhibits were properly put in evidence.

The court properly overruled the motion to quash the indictment. Section 28 of the Prohibition act provides that it shall be unlawful to have or possess any liquor intended for use in violating this act. The first count charges that the defendant unlawfully and willfully did possess for the purpose of sale intoxicating liquor fit for use for beverage purposes without having a permit from the Attorney General. The words "purpose" and "intent" are synonymous, and the charge is equivalent to a charge of possession with intent to sell. The second count charges that the defendant unlawfully sold intoxicating liquor fit for beverage purposes without having a permit from the Attorney General. Both counts charge a former conviction of the defendant under the Prohibition act and that the acts done are prohibited by the statute. This court held in *People* v. *Barnes,* 314 Ill. 140, and in *People* v. *Martin,* id. 110, that an indictment or information under the Prohibition act must show on its face that the possession or sale of intoxicating liquor charged was a possession or sale prohibited by the act. This indictment conforms to that requirement, because every person selling or possessing such liquor for the purpose of sale must have a permit from the Attorney General. The counts are as fully descriptive of the offenses as is the language of the statute, and they allege every substantial element of the offenses as defined by the stat-

ute. They contain every averment necessary to show that the acts complained of were then and there prohibited and unlawful. If the facts alleged are proved the defendant cannot be innocent. The language of the indictment therefore negatives the exceptions contained in the act defining the crime although it is not done by the use of the exact words of the statute. Any equivalent language that excludes with the same certainty the exceptions contained in the act defining the crime may with equal propriety be employed. *Beasley* v. *People,* 89 Ill. 571.

The judgment and sentence in this case will have to be reversed for error in the instructions. There is no elementary principle of the law better established than the one that instructions must be based upon the charge contained in the indictment and applicable thereto. The first instruction for the People violates this rule by informing the jury that it is unlawful to possess intoxicating liquor at any place other than one's private dwelling without a permit from the Attorney General to so possess it. The charge in the first count of the indictment is unlawful possession for the purpose of sale without permission from the Attorney General. Another instruction was to the effect that if the jury believed that intoxicating liquor was possessed in the premises operated by the defendant as a club, and that such liquor was kept in the premises of the defendant and he did not use reasonable means to prevent it being so kept, the jury should find him guilty. This was not the law of the case at all, and there is no excuse for offering such an instruction. Another instruction given on behalf of the People is the following:

"The court instructs the jury that under the law in Illinois the possession of intoxicating liquor by one is *prima facie* evidence that such person keeps and possesses said liquor for the purpose of bartering and selling the same, and if you believe from the evidence beyond a reasonable doubt

that the defendant had in his possession certain intoxicating liquor, as that phrase is defined in these instructions, then you should find the defendant guilty as charged in the indictment or some count thereof, unless you further believe from the evidence that the defendant acquired and used said liquor in a legal manner."

This instruction does not state the law, and particularly the last part of it. The People again ignore the charge that they make in the indictment and conclude by saying that if the jury believe, beyond a reasonable doubt, that the defendant had in his possession intoxicating liquor he should be found guilty by the jury, unless they further believe from the evidence that the defendant acquired the liquor in a legal manner. This placed the burden of proof entirely upon the defendant and was erroneous. We want to emphasize again that it is improper in a case of this kind, wherein there is a contest on the evidence, under section 40 of the Prohibition act, as to what constitutes a *prima facie* case, to inform the jury, in substance, that the defendant, if he makes a defense, must overcome the *prima facie* case. When a defendant goes to trial and introduces evidence disputing the facts charged in the indictment, it is a question then whether the evidence establishes a case against him of guilt beyond a reasonable doubt, and where there is such a contest in the evidence there should be no instructions whatever given as to what constitutes a *prima facie* case. On a contest the question is solely, Have the People established the guilt of the defendant beyond a reasonable doubt?

For the error in giving the instructions aforesaid the judgment of the circuit court is reversed and the cause is remanded.        *Reversed and remanded.*