WILLIAM MILLER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907.*

1. LARCENY—*effect of recent possession of stolen property.* Recent possession of stolen property by one charged with the larceny thereof is *prima facie* evidence of guilt, and will justify a conviction unless attending circumstances or other evidence raises a reasonable doubt of the guilt of the accused; but the burden is not upon the accused to *satisfactorily explain* such recent possession, and if, from all the evidence, there is a reasonable doubt of the guilt of the accused, he should be acquitted.

2. SAME—*when instruction as to effect of recent possession is misleading.* An instruction, in a prosecution for burglary and larceny of a buggy, which states that "possession of such buggy by the defendant recently after the commission of the offense, unsatisfactorily accounted for, is *prima facie* evidence that the defendant committed such larceny and burglary, and such evidence, if any, is sufficient to warrant a conviction of the defendant, unless there appears, from the facts and circumstances in evidence, a reasonable doubt of his guilt," is misleading, and it is reversible error to give it.

3. SAME—*whether a defendant has satisfactorily accounted for possession of property is for the jury to decide.* Whether the testimony by a defendant as to his recent possession of stolen property satisfactorily explains such possession is a question for the jury and not for the court, and an instruction should not be given which leaves an inference that the court considers such explanation unsatisfactory.

4. SAME—*what is competent to be proved in a larceny case.* In a prosecution for larceny of a buggy, where circumstantial evidence is relied upon, it is not error to allow a witness to testify that on the night the buggy was taken from a store in a certain town he met a team drawing two carriages, going from the town in the direction of the defendant's home, although he could not recognize anyone or tell how many persons were in the carriage.

5. CRIMINAL LAW—*when refusal of instruction as to proof of good character is not error.* Refusal of an instruction in a criminal case, to the effect that in cases depending upon circumstantial evidence alone "previous good character on the part of the accused, if proved, is entitled to great weight in favor of his innocence," is

properly refused, where there are other instructions telling the jury that previous good character is proper to be considered by them with all the other evidence.

6. SAME—*when instruction as to credit of witnesses testifying in hope of reward is properly refused.* An instruction in a larceny case calling attention to the fact of a reward, and stating that if the jury believe that any witness for the People has testified in the hope of such reward they should consider such fact in determining the credit to be given to his testimony, is properly refused, where another instruction has been given for the accused covering, generally, all the points touching upon the.interests and motives of witnesses that he was entitled to have given.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

OSCAR H. WYLIE, FLEMING R. MOORE, and NELLIE B. KESSLER, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN P. PALLIS-SARD, State's Attorney, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was indicted for burglary and larceny by breaking and entering the building of one George Wilken with intent to steal, and stealing, a top buggy worth $85, the property of Wilken. He was convicted of grand larceny at the March term of the Iroquois county circuit court and sentenced to the penitentiary. To review this finding he brings this writ of error.

The testimony shows that on the night of May 24, 1906, the implement store of George Wilken, in the village of Danforth, in said county, was entered and a new rubber-tired buggy, valued at about $85, was stolen therefrom. The city marshal of Danforth testified that he was able the next day, because of a previous rain, to track the buggy as far as a church about a block and a half south of the store; that there were no horse tracks accompanying the buggy

tracks from the store to the church; that at the church there were tracks of steel-tired buggy wheels and a team of horses coming in and the same tracks leading out, followed by the tracks of a rubber-tired buggy; that he examined the hoof-marks and found that they were small, and that the right-hand horse was shod in front and the other horse unshod; that on the Saturday after the buggy was taken he measured the tracks made by the horses of plaintiff in error, who had driven to this church in Danforth on Friday evening and tied his horses in the rear of the church, and that these tracks corresponded to those he had measured the day after the burglary, and that plaintiff in error's right-hand horse was shod in front and the other horse was not shod. The witness testified that he measured these tracks by means of small sticks, which he had destroyed. Wilken, the owner of the store, was away the afternoon previous to the burglary and left a mail carrier, one John Kennedy, in charge. Kennedy testified that plaintiff in error was in the store on the evening of May 24, about six o'clock, and in the room from which the buggy was taken; that he inquired if Mr. Wilken had any twine, and incidentally mentioned that he had a buggy in Watseka getting it painted and re-tired and did not need another. Plaintiff in error denies that he was at Wilken's store on that afternoon or evening and that he had this talk with Kennedy. Ralph Meinhardt testified that on the night of May 24, about one o'clock, he drove past a team and top-buggy, having another buggy tied behind, about a mile and a half south of Danforth. It was dark and witness did not recognize the driver, the buggies or the team. The team and buggies were going in the direction of Miller's home, away from Danforth.

In the early part of December the plaintiff in error telephoned John Cromenecker, a constable living in Gilman, and said he understood he had a party desiring to purchase a buggy. Cromenecker replied that he had, and as a result of their talk, within the next two or three days Cromenecker,

accompanied by one Lee, went to the farm where plaintiff in error lived, about four miles south-east of Danforth and about four miles east of Gilman, where they were shown the buggy by the father of plaintiff in error, it then being in pieces and stowed in the loft or upper part of a corn-crib. Plaintiff in error had told his father, if they came, to show the buggy to them. They went to the field where plaintiff in error was at-work, and, after a short talk concerning the buggy, returned to Gilman. In the afternoon of the same day, in company with George Wilken and two others, Cromenecker went again to Miller's home. The buggy was taken from the loft of the crib and identified by Mr. Wilken as the one stolen from his store on May 24. The stolen buggy was rubber-tired, with a black top and red running gear, and originally it bore the name-plate of the Harper Buggy Company, the manufacturers, but when found in the possession of plaintiff in error it had the plate of the Eckhart Carriage Company substituted. On each side of the buggy, below the seat, was a painted rose, which had been varnished or painted over, although on a careful examination the rose was still visible under the paint. The lower part of the side seat-panel had been removed, some new mouldings put on, a medallion taken off and the buggy changed in one or two other minor particulars, all these changes having evidently been made after it was stolen. It was testified to that the number was on the inside of the seat and corresponded to the number in the invoice from the Harper Buggy Company. The buggy was identified by Wilken and the traveling salesman who sold it to him. A salesman for the Eckhart company testified that the vehicle was not of their make; that the serial numbers of the two companies ran entirely different.

Plaintiff in error testified that in addition to working on his father's farm he drove over the county selling stock-food and farm medicines; that about May 26, while out on that business, he met, at a watering trough near Onarga, a man

who gave the name of Fred Richards, (describing him with more or less particularity,) who was driving a horse attached to a new top-buggy; that he again met Richards at Gilman on Decoration day, and Richards wished to sell him the buggy for $65; that he received two postal cards from the same man about the sale of the buggy, but could not find the cards after diligent search; that he saw Richards again at Gilman about June 19, and after some dickering finally loaned him $45 on the buggy, with the verbal understanding that if the money was not paid in six weeks the buggy should belong to plaintiff in error; that he fastened the buggy back of his own and drove it to a barn which he rented in Gilman for the use of his medicine business, and afterwards, in the latter part of June, took it to his father's farm. The son of the owner of that barn testified that he went into the barn to get some fruit jars, about the latter part of June or first of July, and saw there a buggy which corresponded in looks to the one stolen. Plaintiff in error testified that he used the buggy many times during the summer and fall with no attempt at concealment, driving, with a young lady friend, in it to church and to various picnics, sociables and celebrations; that early in December he took the buggy to a farm sale, where it was offered at auction, but the bids were so low that he caused it to be bid in on his own behalf and it was taken back home, and in order to get it out of the way was put, at his father's request, in the loft where it was found. His father corroborated him in this last statement, and the proof is clear that he attempted to sell the buggy at the farm sale in question and had it bid in. The father, a brother and plaintiff in error all testified that he was at home during all the afternoon and evening of May 24 and slept there that night. A friend of the family also testified that he was at their home during the late afternoon and the whole of that evening, and plaintiff in error was there all the time. Several witnesses testified that plaintiff in error used the buggy, without any apparent ef-

fort at concealment, during the summer and fall.  One witness testified that he had ridden in it with him to Danforth. In the locality where plaintiff in error testified this man Richards said he worked is situated a large canning factory, with a farm run in connection therewith, employing over one hundred men.  Several witnesses from that vicinity stated that they did not know any man by that name.  The postman on the rural route testified that in June he had delivered two postal cards at the Miller farm, addressed to Will Miller, and that one was signed "Fred Richards" and the other "Fred," and both were in reference to the sale of a buggy.  On the motion for new trial plaintiff in error filed an affidavit which stated that since the trial he had found two witnesses who were living near Onarga, who would testify that they had met a man answering to the description of the one in question, between Watseka and Crescent City, in June, 1906; that the man gave his name as Richards, and that one of the said witnesses afterwards saw him at work at the canning factory at Onarga.  Witnesses testified as to the good character of plaintiff in error, and the State's attorney admitted on the trial that such reputation had always been good prior to the occurrence in question.

It is insisted that the evidence is not sufficient to sustain a conviction.  The determination of that question is for the jury, and it is only when this court is "satisfied, from a careful consideration of the whole testimony, that there is reasonable doubt of the guilt of the accused, that it will interfere with the verdict of the jury on the ground that the evidence does not support the verdict." (*McCoy* v. *People,* 175 Ill. 224; *Gilman* v. *People,* 178 id. 19; *Henry* v. *People,* 198 id. 162.)  While we are not prepared to say that this record would justify this court in setting aside the verdict because of lack of evidence, we think that it is so conflicting on many material points that the instructions should have stated the law applicable to the facts with accuracy. *Swan* v. *People,* 98 Ill. 610.

It is insisted that instruction 17 given for the People is erroneous. That instruction reads:

"That if you believe, from all the evidence, beyond a reasonable doubt, that a burglary was committed as alleged in the indictment and that the buggy introduced in evidence was stolen, and that shortly thereafter it was in the possession of the defendant, then that the possession of such buggy by the defendant recently after the commission of the offense, unsatisfactorily accounted for, is *prima facie* evidence that the defendant committed such larceny and burglary, and such evidence, if any, is sufficient to warrant a conviction of the defendant, unless there appears, from the facts and circumstances in evidence, a reasonable doubt of the defendant's guilt."

The indictment in the first three counts charged both burglary and larceny, and although those charges are joined together in one count they are independent crimes. A person can be convicted of either crime without being found guilty of the other. (*Lyons* v. *People,* 68 Ill. 271.) Under the law plaintiff in error might be guilty of burglary as charged in the indictment without being guilty of larceny. The first part of this instruction tells the jury as to their finding in case they believe, from the evidence, "that a burglary was committed as alleged in the indictment and that the buggy introduced in evidence was stolen," but does not say stolen "as charged in the indictment." The instruction is so worded that it does not in any way connect the stealing of the buggy with the burglary or larceny charged in the indictment and might have been misleading in that regard. But it is much more seriously defective in other respects. By it the jury are instructed that if the crime was committed and the stolen buggy was shortly thereafter found in the possession of defendant, "then that the possession of such buggy by the defendant recently after the commission of the offense, *unsatisfactorily accounted for,* is *prima facie* evidence that the defendant committed" the crime. Under the

law of this State the recent possession of stolen property is *prima facie* evidence of guilt, but the wording of this instruction might have led the jury to believe that the court assumed that the explanation of plaintiff in error as to how he came into possession of this property was unsatisfactory. Where facts are controverted and the evidence is conflicting, it is error for the court, in instructing the jury, to assume certain facts to be true. (*Chambers* v. *People,* 105 Ill. 409; *Swigart* v. *Hawley,* 140 id. 186; *Cartier* v. *Troy Lumber Co.* 138 id. 533; *Chittenden* v. *Evans,* 41 id. 251.) It is the province of the jury, and not of the court, to pass on the sufficiency of the evidence offered as a satisfactory explanation of recent possession of such stolen property. *People* v. *Walters,* 76 Mich. 195; *State* v. *Kimble,* 34 La. Ann. 392; *Hays* v. *State,* 30 Tex. App. 472; 1 McClain on Crim. Law, 618.

The instruction continues: "Such evidence, *if any,* is sufficient to warrant a conviction." The words "if any" have no proper meaning or place in the instruction at this point, and could only have a tendency to mislead the jury as to the amount of evidence sufficient to warrant a conviction. Fairly construed, the jury would draw the conclusion from them that, however slight the *prima facie* evidence as to the recent possession of the stolen property, if there was any such evidence they would be justified in convicting the plaintiff in error thereunder. The theory of the State was that the plaintiff in error came into possession of the buggy the night it was stolen, but all the proof offered by the State on this was circumstantial, and plaintiff in error insists that much of it, especially as to the measuring of the horses' tracks, was very unreliable. The only proof on the part of the State that plaintiff in error was in possession of the buggy before the farm sale, early in the following December, (outside of a witness who saw a buggy, claimed to be the one in question, the night of the burglary, and the witness who saw a buggy that resembled it, about July, in his

mother's barn, in Gilman,) was the statement of plaintiff in error himself, to the effect that he first saw the buggy a few days after the burglary and obtained possession of it by making a loan on June 19, nearly a month after it was stolen. In considering the evidence as to the exact time and manner he came into possession of the buggy, these words "if any" would naturally cause the jury to rely more upon the testimony of the State as to such recent possession and discredit the explanation of plaintiff in error.

Counsel for defendant in error cite in support of this instruction *Watts* v. *People*, 204 Ill. 233. The wording of the instruction in that case was entirely different from the one here, and while the court held that it was a correct statement as an abstract principle of law, it also held, in view of the facts in that case, that it was error to give it. The People also rely upon the case of *Williams* v. *People*, 196 Ill. 173. There, also, the instruction was based on facts very different from those in this case while its wording was materially different.

The decisions in the various States are not in harmony as to the weight that should be given to the recent possession of stolen property. In this State such recent possession is sufficient to warrant conviction unless attending circumstances or other evidence so far overcomes the presumption as to raise a reasonable doubt of the guilt of the accused. (*Smith* v. *People*, 103 Ill. 82; 1 McClain on Crim. Law, 616, 617.) But this court has ruled many times that the burden is not upon the accused to satisfactorily explain the recent possession of stolen property; that if, from all the evidence, there is a reasonable doubt of the guilt of the accused he must be acquitted. (*Conkwright* v. *People*, 35 Ill. 204; *Comfort* v. *People*, 54 id. 404; *Hoge* v. *People*, 117 id. 35; *Briggs* v. *People*, 219 id. 330; *Watts* v. *People*, *supra;* see, also, *Appleton* v. *People*, 171 Ill. 473; *Wacaser* v. *People*, 134 id. 438; *Alexander* v. *People*, 96 id. 96.) The theory of the State as to the time when the plaintiff in er-

ror obtained possession of the buggy was strenuously denied by him, and evidence was introduced in support of this denial. Notwithstanding its last clause, this long and involved instruction may have led the jury to believe that the accused was compelled by law to assume the burden of explaining satsfactorily. his possession of the buggy before he could be acquitted. The giving of this instruction was reversible error.

Complaint is also made of the eleventh instruction given for the People, touching upon the credit that should be given plaintiff in error's testimony. The first two-thirds of this instruction is substantially the same as the first part of the one given on this subject in *Rider* v. *People,* 110 Ill. 11, but instead of concluding, as that instruction did, by further instructing the jury that if, after considering all the evidence, they find that the accused has willfully and corruptly testified falsely to any fact material to the issues they may entirely disregard his testimony except as corroborated by other credible evidence, the present instruction concluded in these words: "And from that and all other facts and circumstances in evidence bearing upon the question it is for the jury to determine what weight and credit should be given his testimony." The argument is, that the instruction should have stated that before taking into consideration his contradictory statements the jury must believe that he has not only sworn falsely willfully, but that he was contradicted on material points. The instruction here in question did not seek to completely discredit the defendant's testimony. Had it done so, then the qualification insisted upon should have been inserted; but the instruction as worded left it to the jury to take the fact of his contradiction into consideration, if he was contradicted, in connection with all the other facts and circumstances in the record, and then give his testimony such weight and credit as they believed should be given it. We think, under the reasoning of *Rider* v. *People, supra, Hirschman* v. *People,* 101 Ill. 568, *Godair*

229—25

v. *Ham Nat. Bank*, 225 id. 572, *Jennings* v. *People*, 189 id. 320, and *Chicago City Railway Co.* v. *Ryan*, 225 id. 287, there was no error in giving this instruction.

It is also urged that the court erred in refusing to give an instruction for the defendant which told the jury that in cases depending upon circumstantial evidence alone, "previous good character on the part of the accused, if proved, is entitled to great weight in favor of his innocence." The jury were told in other instructions that previous good character was proper to be considered by them in connection with all the other evidence. Good character is permitted to be shown in every criminal trial, but it is for the jury to give it such weight as they think it entitled to. (*Aneals* v. *People*, 134 Ill. 401; *People* v. *Garbutt*, 17 Mich. 9; Wharton on Crim. Evidence,—9th ed.—sec. 60; *Jupitz* v. *People*, 34 Ill. 516; *Hirschman* v. *People, supra;* 5 Am. & Eng. Ency. of Law,—2d ed.—p. 868.) The refusal of this instruction was not error.

Complaint is also made as to the refusal of the third instruction asked by plaintiff in error, which called attention to the fact that the owner of the buggy had offered a cash reward, and stated that if the jury found, from the evidence, that any witness "in behalf of the prosecution" had testified with the hope of this reward, they should take that fact into consideration in determining the credit to be given the testimony of such witness. Plaintiff in error's second instruction covered, generally, all the points touching upon the interests and motives of the witnesses that he was entitled to have given, and there was no error in the refusal of said instruction. *Hoch* v. *People*, 219 Ill. 265; *Mash* v. *People*, 220 id. 86.

It is further urged that the court erred in admitting the testimony of Ralph Meinhardt that on the night of the crime he passed a team drawing two carriages,—one behind the other,—going from Danforth, where the buggy was taken, in the direction of Miller's home; that he could not

tell who or how many persons were in the front carriage. In the admission of circumstantial evidence great latitude is allowed. The jury should have before them every fact which may enable them to come to a satisfactory conclusion, and much discretion is left to the trial court as to the admission or exclusion of such testimony. (3 Ency. of Evidence, 110-116, and cases there cited.) We do not think there was error in admitting this testimony.

For the error committed in giving said seventeenth instruction for the People as to the recent possession of stolen property, the judgment will be reversed and the cause remanded to the circuit court.    *Reversed and remanded.*