(No. 12721.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STEVE P. LALOR, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. CRIMINAL LAW—*when bailee of promissory notes is guilty of larceny.* One who obtains certain promissory notes to hold as security for the performance of a particular obligation by the maker, when they are to be returned, is guilty of larceny as bailee, where, though the obligation is performed, he sells one of the notes and converts the proceeds to his own use.

2. SAME—*a writ of error to reverse judgment does not review action of court after judgment.* The action of the trial court in refusing to admit the defendant to bail after judgment is not brought up for review by a writ of error to reverse the judgment although such action is assigned for error.

3. SAME—*jury may be instructed that they "should" take into consideration circumstances affecting credibility of witnesses.* The use of the word "should" instead of the word "may" is not erroneous in an instruction that the jury "should" take into consideration the conduct and appearance of the witnesses on the stand, their interest and such circumstances as might affect the jury's estimate of the credibility of the witnesses.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

JOHN B. KING, CLYDE H. THOMPSON, and DAVID D. STANSBURY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOHN H. McFADDEN, State's Attorney, and SUMNER S. ANDERSON, (WILLIAM W. WILSON, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, Steve P. Lalor, was convicted of larceny as bailee and has sued out a writ of error.

Mrs. Harriet Humiston, the victim of the crime, was a woman of large financial means who had lived in Pontiac since 1876 and had been a widow since 1883. In the spring of 1918 she became acquainted with Lalor, who was for several months engaged in selling stock of the Peoria Tractor Company in Pontiac and its vicinity. On June 21, 1918, he called on Mrs. Humiston at her home with Francis R. Dennis, whom she did not know. During that call Mrs. Humiston agreed with Dennis to purchase 15,000 acres of land in Volusia county, Florida, for the consideration of certain promissory notes for $92,500 and various stocks of the par value of $83,000. Dennis gave Mrs. Humiston a receipt for the notes and stock and they were delivered to him, except $50,000 of stock known as Second State Pawners and $500 of another stock known as Elgin Motors, the

certificates for which Mrs. Humiston could not find at the time. Dennis told her to turn the stock over to Lalor when she found it, to deliver to Dennis, and Lalor wrote in pencil at the bottom of the receipt, below Dennis' signature, the following memorandum: "50,000 Second State Pawners and 500 Elgin short at the date June 21, 1918." Lalor had no interest at any time in the contract or in the stock but acted only as the agent of Dennis. On June 24 Lalor went to Mrs. Humiston's house and she delivered to him the $500 of Elgin Motors and $10,000 of the Second State Pawners which she had found. He noted the receipt of this stock in pencil on the receipt Dennis had given, below the former notation. On June 27 he returned to Mrs. Humiston and demanded that she either put up a bond or give notes for $20,000. Mrs. Humiston preferred to give notes and accordingly executed and indorsed seven notes for various sums, amounting in the aggregate to $20,000, payable to her own order, and delivered these to Lalor. He thereupon made the following notation on Dennis' receipt, below the previous notations: "Making 40,000 Second State Pawners short on June 27, 1918, for which Mrs. Humiston gave notes for $20,000 until stock is issued and indorsed to above parties." Probably within a week,—certainly within two weeks afterward,—Mrs. Humiston found the stock and delivered it to Lalor. Dennis never told Lalor to get a bond from Mrs. Humiston for the delivery of the stock or to get the notes, and Lalor did not deliver the stock to Dennis until July 27. On July 19, after Mrs. Humiston had completely complied with her agreement with Dennis, Lalor having both the $40,000 of Second State Pawners and the notes for $20,000, telephoned to E. A. Roberts, a farmer in Livingston county, asking him to come to Pontiac. Roberts had become acquainted with Lalor in April through a letter of introduction from Dennis and in the following months had worked for him about twenty days driving a car for him and assisting in making sales of Peoria Tractor

stock. Lalor owed him about $600 and he had signed La-
lor's note for $1000 as surety. When they met at the hotel
in Pontiac, Lalor showed him a $5000 note of Mrs. Hu-
miston's and asked him how he liked the looks of it. He
said it looked all right to him, and Lalor told him to take
it to his banker and see if he could sell it; that if he sold
it Lalor would pay him what Lalor owed him. Roberts
took the note to his bank but the banker did not buy it, and
Roberts returned to the hotel where Lalor was waiting for
him and reported his want of success but told Lalor he
thought he could get rid of the note for him. The result
was that Roberts bought the note for its face less $100 dis-
count or commission, Roberts giving Lalor his check for
$3300 and retaining $1600 for the note on which he was
surety and the balance due him. All these facts are undis-
puted. Lalor had the notes in his possession, he had no
interest in them, the act which they were given to secure
had been performed, Mrs. Humiston was entitled to the
return of the notes, and yet Lalor disposed of one of the
$5000 notes for his own purposes and converted the pro-
ceeds to his own use. Afterward, on July 25, Mrs. Hu-
miston began a suit against Dennis, Lalor and others in the
circuit court of Cook county and obtained an injunction
forbidding the transfer of the notes and stock.

Lalor claimed that Mrs. Humiston consented to his use
of the note. He testified that he told her that he was
having a good deal of trouble in Chicago having the stock
transferred and it would only be right for her to stand a
certain portion of the depreciation, and she said that he
could arrange it as he saw fit; that it would be all right
with her; that he could go ahead and use what he wanted.
Mrs. Humiston denied giving any consent to the sale of
the notes.

It is argued that the evidence is not sufficient to jus-
tify the conviction, but upon the defendant's own statement
no other verdict was possible. If the notes were not ob-

tained by false pretenses in the first place with the design of swindling Mrs. Humiston, at any rate she was entitled to have them returned to her when she delivered the stock, not later than July 11. Lalor had no right to retain them longer. He does not claim that Mrs. Humiston consented to his using any of the notes except in connection with the expenses in procuring the transfer of the stock or depreciation arising out of the delay, and there is no evidence of any such expenses or depreciation. By his sale of one of the notes and appropriation of the proceeds several days after the stock was delivered and the contract completely closed, he was guilty of larceny.

A number of objections are made to the admission and rejection of evidence, to the permitting of leading questions to be asked, and of an impeaching question for which it is insisted the proper foundation had not been laid. Counsel for the plaintiff in error do not urge that there was any one wrongful admission of evidence so seriously objectionable as to require a reversal, but they insist that there were many errors in the trial, which, together with the alleged manifest prejudice of the judge, were seriously prejudicial to the plaintiff in error and should cause a reversal of the judgment. The objections made on either side were numerous but are not of such importance as to justify the discussion of them in detail in an opinion. The leading questions did not bring out any fact as to which there was any controversy. The substance of the impeaching question was asked of the plaintiff in error, and he answered that he did not remember the conversation. There was no serious error in the admission or rejection of evidence, no evidence was excluded which could have benefited the plaintiff in error, and, if any minor errors occurred, no incompetent evidence was received to his prejudice.

Much of the brief of the plaintiff in error is devoted to a discussion and criticism of the alleged prejudice of the judge and his hostile conduct during the trial. No objec-

tions of this kind were made during the trial and neither the motion for a new trial nor the assignments of error refer to the conduct of the judge, therefore the question is not presented for review.

It is assigned for error that the court erred in refusing to admit the plaintiff in error to bail after judgment, but the action of the court after judgment is not brought up for review by a writ of error to reverse the judgment.

The court instructed the jury that if Mrs. Humiston delivered the notes to Lalor as security for the delivery of the stock, then the $5000 note in question in this case remained the property of Mrs. Humiston and Lalor would have no right to sell it without her consent. It is urged that this instruction ignores the defendant's theory as to the contract under which the notes were given, and took from the jury the question whether the $5000 note remained the property of Mrs. Humiston and the defendant had the right to sell it without her consent. Under none of the various versions of the transaction to which the plaintiff in error testified as a witness were the notes in his possession not the property of Mrs. Humiston and under none of them was he authorized to sell any of the notes without her consent, and the instruction submitted to the jury the only issue in the case: whether she authorized the plaintiff in error to sell the note. In another instruction based upon a similar hypothesis the court instructed the jury that if Lalor did fraudulently and without Mrs. Humiston's consent convert to his own use and sell the note for $5000 they should find him guilty of embezzlement as charged in the indictment. The further objection is made to this instruction that it omits the element of intention to steal. Similar objections are made to other instructions, but the statute provides that whoever fraudulently converts to his own use money, goods or property delivered to him which may be the subject of larceny shall be deemed guilty of larceny, and the instructions were correct.

Two instructions were given as to circumstantial evidence, and it is objected to them that there is no circumstantial evidence in the case and the instructions therefore should not have been given; and further, that the last sentence of one of the instructions, which stated that the "law demands a conviction wherever there is sufficient legal evidence to show the defendant's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence," was, in effect, informing the jury that there was legal evidence sufficient to justify finding the defendant guilty. There were various circumstances in the case tending to indicate whether or not the defendant's intentions were honest which were proper for the jury to consider, and the sentence last quoted did no more than inform the jury that circumstantial evidence was evidence which it was their duty to consider and weigh the same as other evidence in the case and base their verdict upon if they regarded it as sufficient to show the defendant's guilt beyond a reasonable doubt.

It is urged that the use of the word "should" in an instruction in regard to the credibility of witnesses, which told the jury that they should take into consideration the conduct and appearance of the witness on the stand, his interest, etc., was erroneous and that the word "may" should have been used instead. All the circumstances referred to in the instruction were such as might affect the jury's estimate of the credibility of the witness, and it was proper to tell them that they should take them into consideration.

Objection is also made to an instruction in regard to the credibility of the defendant as a witness, which is in the same language as an instruction which was held in *Hirschman* v. *People*, 101 Ill. 568, not to be open to the objection urged here and has been approved in many cases.

The judgment is affirmed.      *Judgment affirmed.*