THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ABE PRIDDY, Plaintiff in Error.

*Opinion filed October 22, 1927.*

1. CRIMINAL LAW—*counsel must point out error in instruction.* Counsel objecting that a particular instruction given is erroneous must point out in what respect it is incorrect.

2. SAME—*People are entitled to instructions presenting theory of prosecution.* The People are entitled to have instructions which present the prosecution's theory of the case, and where such instructions are requested and state correct propositions of law they may be given although they have no application to the case on the theory contended for by the defendant.

3. SAME—*jury may be instructed that homicide is not excused because of victim's reputation for violence and quarrelsomeness.* In a prosecution for murder it is proper to instruct the jury that the victim's general reputation for violence and quarrelsomeness would not in itself justify killing him maliciously unless the killing was necessary, or apparently necessary, in defense of one's self.

4. SAME—*a verbose instruction will not necessarily cause reversal.* While long and involved instructions should be avoided, the mere fact that an instruction is verbose is not a ground for reversal if the instruction is otherwise unobjectionable.

5. SAME—*when instruction as to circumstantial evidence is not erroneous in ignoring defense.* An instruction purporting to define circumstantial evidence and informing the jury that such evidence is sufficient to convict if the facts and circumstances shown establish the guilt of the defendant beyond a reasonable doubt, is not erroneous in ignoring the plea of self-defense where it does not purport to state the whole law of the case nor to direct a verdict and where other instructions state the law of self-defense.

6. SAME—*instruction should not tell jury to consider demeanor of defendant during trial—reversal.* An instruction informing the jury that the demeanor of the defendant during the trial is a subject for their consideration is erroneous, but the giving of such an instruction will not require a reversal where the verdict is clearly justified by the evidence.

7. SAME—*what is proper general instruction as to degree of proof required to convict.* A general instruction is proper which informs the jury that before they can convict they are required to believe beyond a reasonable doubt, after a fair and impartial consideration of the evidence and the instructions, that the defend-

ant is guilty as charged in the indictment, and where the instruction does not attempt to state particular facts and direct the jury to return a verdict upon them it is not subject to the objection that it fails to point out what particular circumstances must be established by the evidence.

WRIT OF ERROR to the Circuit Court of Williamson county; the Hon. R. R. FOWLER, Judge, presiding.

J. L. FOWLER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, and VIRGIL L. BLANDING, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Abe Priddy was indicted by a grand jury in Williamson county for the murder of George Morgan. The third jury trial resulted in a verdict finding him guilty as charged in the indictment and fixing his punishment at fifteen years in the penitentiary. Motions for a new trial and in arrest of judgment were made and denied. Judgment was rendered upon the verdict and sentence imposed. Priddy prosecutes this writ of error for a review of the record.

Plaintiff in error resided about three-fourths of a mile east of Cambria, in Williamson county, on the east side of a public highway running north and south. Morgan lived on the opposite side of the same highway about a third of a mile south of the home of plaintiff in error. The highway was thirty-three feet wide. Its traveled portion was from sixteen to twenty feet in width. The house of plaintiff in error was located about twelve feet east of the highway and had a porch along the front. About sixteen feet north of the house there was a culvert in the highway. Owing to washouts the west end of the culvert was out of repair. Along the west side of the highway there was a gravel or cinder path extending south to the culvert. At this point pedestrians who wished to continue south were

compelled to cross to the portion of the road traveled by vehicles and go around the washed-out drain. Both plaintiff in error and Morgan were employed in a coal mine and had been friends for many years. Plaintiff in error was sixty-one years of age, five feet ten inches in height and weighed about 135 pounds. Morgan was over six feet tall. His weight was nearly 200 pounds, and, while his exact age does not appear, he was probably fifty years old. He had broken his right arm in childhood, and as the result of this injury the arm was shrunken and stiffened, its movements were restricted, he had only a partial use of the member, and he was left-handed. Morgan had performed manual labor in the mine, such as loading, pushing, and similar work, but he had not been engaged in digging coal. About noon on September 6, 1921, Morgan walked south on the path west of the highway, and when he reached the point where the drain was out of repair he entered upon the highway and was shot. He fell so that he lay on his back, his head to the southeast and his feet to the northwest, his left arm over his face and his right leg drawn up under his left leg. Persons were attracted by the shooting, and they proceeded to the spot where Morgan was found and straightened out his legs and placed his arms upon his breast. Shortly thereafter a deputy sheriff arrived and Morgan's body was removed to his home and was there undressed. A 32-20 Colt revolver was found in the left pocket and a number of cartridges in the right pocket of the jumper which he wore underneath his overalls. Four persons saw Morgan fall without seeing the assailant and other persons heard the shooting. The shots were fired from a shot-gun. The most extensive wound was under the right shoulder-blade. There was another wound in the back of the head and there were scattered wounds in other parts of the head, nose and arm. Some of the shot had passed through the body while others remained embedded in it. Shortly after the shooting plaintiff in error was seen

at the southwest corner of his house with a revolver in his right hand. A shot-gun was standing against the house.

A week or ten days prior to September 6, Morgan and plaintiff in error, both carrying revolvers, met at Henry Skelcher's place of business, where refreshments were served. There was an encounter between them and each fired at the other. Morgan was shot in the wrist, as the result of which he carried his left arm in a sling at the time of his death. According to one witness, plaintiff in error, in commenting upon this experience, said that he aimed to shoot Morgan's "heart out of him, and that he would do it if he got a chance." Previously, Morgan had charged that plaintiff in error caused the assessment on his property to be increased. Plaintiff in error denied the charge, and the dispute caused ill-feeling between them, especially upon the part of Morgan.

On September 6, Albert Williams, who was well acquainted with Morgan and plaintiff in error, called at the home of Charles Brayfield, which was located on the west side of the highway and about two hundred feet north of the house of plaintiff in error. Williams saw Morgan approach from the north with his left arm in a sling. Soon a shot was fired, and Williams, turning quickly, looked in a southeasterly direction and saw Morgan fall to his knees. Another shot followed and Morgan fell over completely. At that time Morgan was forty or fifty feet from the house of plaintiff in error, but Williams did not see the latter.

Beulah Brayfield, the wife of Charles Brayfield, was at home when Albert Williams called. Ora Brashears, her mother, was also present. Mrs. Brayfield saw Morgan walk south on the west side of the highway with his left arm in a sling, and when he turned around the culvert and was facing southwest she heard a shot. Morgan sank. A second shot was fired and he fell to the ground. She stood in the dining-room of her home and could see the house of plaintiff in error, but she did not see him. Ora Brashears,

who was in the dining-room with her daughter at the time, corroborated her daughter's testimony.

Belle Osborn, the wife of John Osborn, lived about four hundred feet south of plaintiff in error. Looking north to see if her husband was coming home she heard a gun fired and saw Morgan fall to his knees. A second shot was fired and Morgan sank to the ground. In about five minutes plaintiff in error walked from his house to the highway, looked at Morgan's body and then returned to his house. Brayfield and James Brashears both testified that there was nothing to obstruct the view of a person from the former's dining-room porch to a point south of the west end of the culvert, where Morgan's body was found.

Plaintiff in error admitted that he had done the shooting. He testified as follows: When Morgan accused him of interfering with the assessment on his property, he, Morgan, made the threat that he would kill plaintiff in error. At another time Morgan searched him, stating that he had been informed that plaintiff in error was carrying a revolver with which to shoot him, and that if he found a revolver on the witness' person he intended to shoot him. At Skelcher's place of business, while outside of the building, plaintiff in error walked in front of Morgan, whereupon he swore and struck plaintiff in error so forcibly with a revolver that his jaw was broken. Shooting followed, and one of the shots fired by plaintiff in error struck Morgan in the wrist. After they entered the building Morgan fired one or two shots, when a third person, William Underwood, succeeded in taking the revolver from him. On September 6, at noon, plaintiff in error was sitting on his porch discussing with Virgil Hopkins matters concerning the mine in which he was employed when they saw Morgan approaching on the west side of the highway. After reaching the culvert and starting across the highway, Morgan, in profane language, said to plaintiff in error, "I will get you yet," and started to reach for his pocket. Plaintiff in

error jumped into the house, grabbed his shot-gun, which was standing near the dining-room door, and as Morgan was about to draw his revolver from his pocket fired at him twice. After the first shot Morgan staggered back and plaintiff in error fired again as quickly as he could do so. His daughter informed a police officer of the shooting. In the meantime plaintiff in error walked to the highway to ascertain whether Morgan was dead.

Virgil Hopkins, a miner, corroborated the testimony of plaintiff in error concerning Morgan's approach on the highway, his remark to plaintiff in error and the latter's rushing into the house for his gun. At this point Hopkins hurried to the rear of the house and soon heard the report of a gun but did not see the shooting. There were two shots. Hopkins returned to the front of the house and saw Morgan lying on the west side of the highway just south of the culvert and about thirty feet from the house.

George E. Searls, manager of the mine in which both men were employed, testified that on the morning of the day of the tragedy he discussed with Morgan the question whether his son should work at the mine in his stead because his arm was injured, and that Morgan at the time threatened to kill plaintiff in error.

Elihu Sweet, a miner, testified that about a month prior to Morgan's death he heard him say, referring to plaintiff in error, that "if Abe ever passed his path he aimed to kill him;" that on one occasion, when Morgan was intoxicated, he said that he had laid in certain fence corners until nine or ten P. M., but that plaintiff in error seemed to know of his presence and would return home by another route; that Morgan's right arm was crippled and that he had been unable to work with it for about sixteen years.

Robert Hadfield, the proprietor of a restaurant in Carterville, in Williamson county, testified that between 9:30 and 10:00 A. M. on the 6th day of September Morgan ate in his restaurant and exhibited a revolver and some

cartridges to him, and that Morgan told him that he would hear, probably before night, of his, Morgan's, "getting even" with plaintiff in error.

Van Vaughn testified that two or three months before the tragedy Morgan told him he intended to kill plaintiff in error. James William Griffith testified that four or five days before the shooting Morgan said that either he would kill plaintiff in error or the latter would kill him.

Twelve witnesses were called to testify concerning Morgan's general reputation as a dangerous and violent man. A majority of these witnesses testified that his general reputation in that respect was bad.

A reversal of the judgment is sought by plaintiff in error upon two grounds: First, the giving of prejudicially erroneous instructions requested by the prosecution; and second, the making of improper and prejudicial remarks by the State's attorney in his closing argument to the jury.

The first of the instructions of which complaint is made is the sixth, which it is asserted assumes that Morgan was going away from plaintiff in error at the time he was shot. The instruction reads, that if the jury "believe from the evidence beyond a reasonable doubt that George Morgan started or was going or had gone past Priddy's home and towards the west side of said road," and also believe from the evidence, beyond a reasonable doubt, certain other facts, "you should not acquit the defendant solely on account of any danger that you might believe and feel that Priddy would be subjected to in the future, and you could not rightfully or legally acquit the defendant merely and solely because of any threats made by Morgan nor solely because of any former difficulty or difficulties nor because of any dangerous characteristics of Morgan. Any or all of these things would not authorize an acquittal if you believe from the evidence beyond all reasonable doubt at the time of the killing of Morgan and immediately before that Morgan was going away from Priddy, and that Priddy shot and

killed Morgan when there was no necessity, real or apparent, for killing Morgan in order to save himself from death or great bodily harm at Morgan's hands." No assumption of fact as charged was made in the instruction, and the jury could not mistake the court's direction to determine whether the facts recited were established by the evidence beyond a reasonable doubt. *People* v. *Meyer,* 289 Ill. 184; *People* v. *Silver,* 286 id. 496.

The sixth instruction, plaintiff in error further contends, is incorrect and fails properly to guide the jury in deliberating upon a verdict. In what respect the instruction is incorrect is not made to appear. It is counsel's duty to point out wherein error exists. (*People* v. *Pennell,* 315 Ill. 124; *People* v. *Goodrich,* 251 id. 558; *People* v. *Hohimer,* 271 id. 515.) Plaintiff in error admitted the shooting, and the only defense, therefore, would be self-defense or justifiable homicide. The instruction does not purport to be a complete statement of the law on any particular subject, but it states that if the jury find from the evidence the existence of certain recited facts and circumstances, such facts and circumstances, alone, would not justify an acquittal. The People are entitled to have instructions which present the prosecution's theory of the case, and where such instructions are requested and state correct propositions of law they may be given although they have no application to the case on the theory contended for by the defendant. *People* v. *Grant,* 313 Ill. 69.

The seventh instruction, it is argued, is substantially a repetition of the sixth. The two are not alike but differ from each other. Instruction 7 sets forth, in effect, that the victim's general reputation for violence and quarrelsomeness in itself would not justify killing him maliciously unless the killing was necessary, or apparently necessary, in defense of one's self. This statement is not improper. The rule of law that a person cannot be convicted of crime simply because he is an undesirable character generally

could be invoked in the present case. *People* v. *Meisner,* 311 Ill. 40.

It is also objected that the sixth and seventh instructions are long and disjointed. While long and involved instructions should be avoided, the mere fact that they are verbose is not a ground for a reversal of the judgment if they are otherwise unobjectionable. *People* v. *Parker,* 284 Ill. 272.

The tenth instruction, plaintiff in error contends, directs a verdict but ignores the plea of self-defense. The instruction, taken in its entirety, purports to define circumstantial evidence. It informs the jury that evidence of this character is sufficient to convict if the facts and circumstances shown by the evidence establish the guilt of the defendant beyond a reasonable doubt. It does not purport to state the whole of the law applicable to the case and to direct a verdict. The instruction is only one of a series and should be so considered. Other instructions defined the law of self-defense.

Plaintiff in error contends that the twelfth instruction assumes that he feloniously and maliciously shot Morgan in the back and killed him, and that the instruction is not based on any evidence in the case. The instruction expressly states that if the jury believe that the facts recited are established by the evidence beyond a reasonable doubt, that the killing was not done in self-defense as explained in the instructions, then the defendant would be guilty, and it would be no defense that Morgan had previously made assaults upon the defendant. The facts and circumstances recited were not assumed as existing but their determination was left to the jury. (*People* v. *Silver, supra.*) Nor was the instruction unsupported by evidence. The coroner testified that there was a wound between the shoulder-blade and the spine covering a space of four or six inches and that it was sufficient to cause death. Other witnesses testified substantially to the same effect. Unless facts and cir-

cumstances fairly shown by the evidence can be incorporated in instructions, the prosecution may be denied the right properly to present to the jury its theory of the case.

The thirteenth instruction, plaintiff in error insists, told the jury that to justify the killing of another in self-defense such killing must have been absolutely necessary to save the defendant from death or great bodily harm. The instruction does not state that to constitute self-defense the killing must have been absolutely necessary in either situation. Wherever the essential elements of self-defense are set forth in the instruction, either in a positive or negative form, the danger, it is expressly stated, must have been "real or apparent" and the killing "necessary or apparently necessary." The criticism made upon the instruction is without merit.

The fifteenth instruction, plaintiff in error contends, assumes that he left his porch, went to a place of safety, procured his shot-gun, came back to the front of the house and shot Morgan, whereas, it is asserted, he took only one step toward the dining-room door, reached inside and took his gun, and that he was on his porch during the whole period, in plain view of the decedent. The instruction is long, and after setting forth certain hypotheses continues: "If the person who is in the place where he has a right to be and to remain as aforesaid, if such person does go to a place of safety, and after going to said safe place if the person killed also goes away from the person doing the killing and fully and in good faith abandons and desists from any and all acts, if he committed any acts that reasonably appeared to the slayer as an attempt to kill or injure the slayer, and if there was no real or apparent danger of the slayer losing his life or of receiving great bodily harm at the hands of the deceased, and if the slayer then returns from said place of safety and then shoots and kills another at a time when it was not actually or apparently necessary to do so for the slayer to prevent himself from being killed

or seriously injured at the hands of the person killed, then such a killing, if committed under the circumstances set forth   *   *   *   would be unlawful, regardless of what the deceased had done to the slayer on other occasions and regardless of what he said about the slayer." Plaintiff in error testified that when Morgan made the threatening remark as he approached the house and was reaching for his revolver, he, plaintiff in error, jumped for his gun, which stood inside the dining-room door. On cross-examination plaintiff in error admitted that he took two steps to get his gun; that he aimed at Morgan's breast and fired as quickly as he could, and that Morgan had a pistol started out of his pocket but did not have the pistol in his hand when he, plaintiff in error, shot him. Hopkins, who was with plaintiff in error on the porch when Morgan approached on the west side of the highway, testified that plaintiff in error made "a dive for the inside" of the house. The instruction was based upon evidence in the case, and the recitation of the facts hypothetically did not constitute an assumption of facts.

It is further contended that the seventeenth instruction given at the prosecution's request was erroneous in permitting the jury to consider the demeanor of plaintiff in error not only while he was on the witness stand but also during the trial. Similar instructions were given in the cases of *Hirschman* v. *People,* 101 Ill. 568, and *Rider* v. *People,* 110 id. 11, and the judgments of conviction were affirmed. In neither of those cases, however, was the present contention made. Where the specific objection has been urged that an instruction informed the jury that the demeanor of the defendant during the trial was a subject for their consideration the instruction has been held erroneous. (*Purdy* v. *People,* 140 Ill. 46; *Vale* v. *People,* 161 id. 309; *People* v. *McGinnis,* 234 id. 68.) But in the case last mentioned, the court, reviewing a like instruction, said, at page 76: "In a case where the evidence of guilt was clear and there

was but little, if any, conflict in the evidence and the testimony of the defendant was not vital to his defense, an instruction in the form of the People's fifteenth instruction might not require a reversal of the judgment of conviction." In the instant case the evidence of the guilt of plaintiff in error is clear. Morgan's right arm had been crippled for many years. At the time of his death he carried his left arm in a sling owing to a shot in the wrist fired by plaintiff in error a short time before. Morgan was shot in the back. After his body had been taken to his home a revolver was found in the left pocket of his jumper, which he wore underneath his overalls. Under these circumstances it can hardly be maintained that plaintiff in error was in any danger, either actual or apparent, of losing his life or suffering great bodily harm at the hands of Morgan. The jury's verdict was clearly justified, and it is not apparent how the seventeenth instruction was prejudicial to plaintiff in error.

The nineteenth instruction, plaintiff in error argues, was erroneous because it informed the jury that it was not necessary that every circumstance in evidence be proved beyond a reasonable doubt and because it failed to point out what circumstances should be so established. By the instruction, before the jury could convict they were required to believe, beyond a reasonable doubt, after a fair and impartial consideration of the evidence and the instructions of the court, that the defendant was guilty as charged in the indictment. The given instructions fairly stated the rules of law applicable to the case. The nineteenth instruction required the jury to consider the whole of the evidence and all of the instructions. It did not attempt to state particular facts and to direct the jury to return a verdict upon them. It was a general instruction and correctly stated a rule of law. *Weaver* v. *People,* 132 Ill. 536.

Finally, plaintiff in error complains that the State's attorney in his argument to the jury remarked that plaintiff

in error had called witnesses to prove that Morgan's general reputation with respect to being dangerous and violent was bad, while the law prevented any evidence of the general reputation of plaintiff in error in respect of the same characteristics until after he had raised the issue by offering evidence upon the subject. It is argued that the jury must have inferred from these remarks that plaintiff in error was a dangerous and violent man, and that, in consequence, the remarks were highly prejudicial to him. Objections to the remarks were sustained and they were excluded from the jury's consideration. While the remarks were improper and should not have been made, yet in view of the evidence plaintiff in error was not prejudiced by them.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*